USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/22/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re:

RESIDENTIAL CAPITAL, LLC et al.,

        Debtors.

---

RESCAP LIQUIDATING TRUST,

        Plaintiff,

- against -

SUMMIT FINANCIAL MORTGAGE LLC
f/k/a SUMMIT FINANCIAL, LLC and
SUMMIT COMMUNITY BANK, INC. f/k/a
SHENANDOAH VALLEY BANK, N.A.,

        Defendants.

**MEMORANDUM
OPINION & ORDER**

14 Civ. 5453 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is an adversary proceeding originally filed in the United States Bankruptcy Court for the Southern District of New York by Plaintiff Rescap Liquidating Trust ("Rescap") – successor to Residential Funding Company, LLC, f/k/a Residential Funding Corporation ("RFC") – against Defendants Summit Financial Mortgage LLC, f/k/a Summit Financial, LLC ("Summit Financial") and its guarantor Summit Community Bank, Inc., f/k/a/ Shenandoah Valley Bank, N.A ("Summit Bank"). (Cmplt. (Dkt. No. 3-1)); see also Rescap Liquidating Trust v. Summit Fin. Mortg., LLC, Adv. Pro. No. 14-1996 (MG) (Bankr. S.D.N.Y. May 13, 2014) (Bankr. Dkt. No. 1). RFC was formerly in the business of acquiring and securitizing residential mortgage loans. (Cmplt. (Dkt. No. 3-1) ¶ 2) Rescap claims that Summit Financial – a mortgage lender – sold RFC loans that contained material defects, which RFC then securitized. (Id. ¶ 6)

RFC was later sued by numerous counterparties and investors in connection with defective loans, and it filed a bankruptcy petition in this District. (Id. ¶¶ 7-8) RFC settled its liabilities with those parties in the bankruptcy proceedings and its successor, Rescap, now asserts claims for breach of contract and indemnification against Summit Financial and for breach of a guaranty agreement against Summit Bank, in connection with the sale of the allegedly defective loans. (Id. ¶¶ 10, 12)

Defendants have moved to withdraw the reference of this action to the bankruptcy court. (Dkt. No. 1) For the reasons stated below, Defendants' motion will be denied.

## BACKGROUND[1]

### I.    THE PARTIES' AGREEMENTS

Prior to its insolvency, RFC was in the business of acquiring and securitizing residential mortgage loans. (Cmplt. (Dkt. No. 3-1) ¶ 2) RFC purchased loans from correspondent lenders, including Summit Financial, and then re-sold these loans to "whole loan" purchasers or pooled these loans and sold them in the form of residential mortgage-backed securities ("RMBS"). (Id. ¶ 3)

On September 25, 2003, Summit Financial and RFC entered into a Client Contract governing RFC's purchase of loans from Summit Financial. (Cmplt. (Dkt. No. 3-1), Ex. A (Client Contract)) According to Rescap, RFC purchased more than 2,500 mortgage loans from Summit Financial pursuant to this contract. (Cmplt. (Dkt. No. 3-1) ¶ 4) These loans had an original principal balance of more than $121 million. (Id.)

---

[1] The following facts are taken from the parties' pleadings and other submissions and are uncontroverted unless otherwise indicated.

          The Client Contract contains the following provision regarding venue:

> **Jurisdiction and Venue.** At the option of [RFC] the Program Documents may be enforced in any state or federal court within the State of Minnesota. [Summit Financial] consents to the jurisdiction and venue of those courts, and waives any objection to the jurisdiction or venue of any of those courts, including the objection that venue in those courts is not convenient. Any such suit, action or proceeding may be commenced and instituted by service of process upon [Summit Financial] by first class registered or certified mail, return receipt requested, addressed to [Summit Financial] at its address last known to [RFC]. [Summit Financial]'s consent and agreement under this section does not affect [RFC's] right to accomplish service of process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against [Summit Financial] in any other jurisdiction or court. In the event [Summit Financial] commences any action in another jurisdiction or venue under any tort or contract theory arising directly or indirectly from the relationship created by the Program Documents, [RFC] at its option may have the case transferred to a state or federal court within the State of Minnesota or, if a transfer cannot be accomplished under applicable law, may [ ] have [Summit Financial]'s action dismissed without prejudice.

(Cmplt. (Dkt. No. 3-1), Ex. A (Client Contract) ¶ 13)

          Simultaneous with RFC and Summit Financial's execution of the Client Contract, RFC and Shenandoah Valley National Bank – which later merged with Defendant Summit Bank – executed a guarantee agreement ("the Guaranty"), in which Shenandoah Valley guaranteed Summit Financial's obligations to RFC under the Client Contract. (Cmplt. (Dkt. No. 3-1) ¶ 17) The Guaranty does not address jurisdiction and venue in the event of litigation. (Cmplt. (Dkt. No. 3-1), Ex. A (Guaranty) ¶ 17)

          Rescap alleges that certain loans that Summit Financial sold to RFC contained material defects in violation of Summit Financial's representations and warranties in the Client Contract. (Cmplt. (Dkt. No. 3-1) ¶ 6) According to Rescap, these representations and warranties were designed to protect RFC from risk associated with borrower fraud, appraisal fraud, violations of state and federal law, and other credit and compliance issues. (Id. ¶ 5) Rescap claims that – as a result of defects in Summit Financial's loans and loans provided by other

3

correspondent lenders – RFC's counterparties and RMBS investors sued RFC in approximately two dozen actions throughout the country. (Id. ¶¶ 7-8)

## II. RFC'S BANKRUPTCY ACTION AND THE CHAPTER 11 PLAN

On May 14, 2012, RFC and related entities (collectively, "the Debtors") filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York. See In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. 2012) (Bankr. Dkt. No. 1); see also Cmplt. (Dkt. No. 3-1) ¶ 8. The action was assigned to Bankruptcy Judge Martin Glenn. Hundreds of proofs of claim were filed seeking damages associated with defective loans sold by RFC. (Cmplt. (Dkt. No. 3-1) ¶ 9) Neither Summit Financial nor Summit Bank filed a proof of claim in that proceeding. (Def. Br. (Dkt. No. 2) at 9)

On December 11, 2013, the bankruptcy court confirmed the Debtors' Second Amended Joint Chapter 11 Plan ("the Plan"). See In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065). In connection with the Plan, the Bankruptcy Court approved a global settlement in which RFC agreed to pay $10 billion to settle claims related to residential mortgage-backed securities ("the Global Settlement"). (Cmplt. (Dkt. No. 3-1) ¶ 10; Def. Br. (Dkt. No. 2) at 9); see also In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065, ¶¶ 7, 9 and Ex. A (Appendix), Art. IV(A)).

The order confirming the Plan and the Plan itself designate Rescap as successor to the Debtors. See In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065, ¶¶ 21-26, 48-49 and Ex. A (Appendix), Art. I, ¶ 170) The Plan provides that Rescap's powers, authority, and duties as successor to the Debtors are governed by

the Liquidating Trust Agreement, which was executed on December 17, 2013. See id. at Ex. A, Art. VI(A)); Liquidating Trust Agmt. (Dkt. No. 3-2). Pursuant to the Plan, the Debtors assign various causes of action – including the claims in the instant case – to Rescap. See In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065 ¶¶ 24, 48-49); Cmplt. (Dkt. No. 3-1) ¶ 10; see also Def. Br. (Dkt. No. 2) at 9. Rescap, in turn, is responsible for distributing any monies obtained as a result of litigating these claims to the Debtors' creditors. (See Liquidating Trust Agmt. (Dkt. No. 3-2) at Arts. II-V); see also In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065, ¶¶ 48-49).

## III. LITIGATION AGAINST CORRESPONDENT LENDERS

After confirmation of the Plan, RFC filed sixty-six substantially similar actions in the District of Minnesota, asserting breach of contract and indemnification claims against mortgage lenders pursuant to mortgage loan purchase and warranty agreements between the lenders and RFC. See, e.g., Residential Funding Co., LLC v. Greenpoint Mortg. Funding, Inc., 519 B.R. 593, 595 (S.D.N.Y. 2014); Residential Funding Co., LLC v. Cherry Creek Mortg. Co., 2014 WL 1686516, at *1 (D. Minn. Apr. 29, 2014). Beginning in March 2013, RFC moved to transfer these cases from Minnesota to the Southern District of New York. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 596-97; see, e.g., Cherry Creek Mortg. Co., 2014 WL 1686516, at *1. After seven of its transfer motions were denied, RFC withdrew its remaining motions. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 597.

Rescap subsequently filed new actions in the Southern District of New York and in New York state court, as well as several adversary proceedings in the bankruptcy court for this District. Id. Rescap filed the instant adversary proceeding in this District's bankruptcy court on

May 13, 2014. (Cmplt. (Dkt. No. 3-1)); see also Rescap Liquidating Trust v. Summit Fin. Mortg., LLC, Adv. Pro. No. 14-1996 (MG) (Bankr. S.D.N.Y. May 13, 2014) (Bankr. Dkt. No. 1) Rescap asserts that the bankruptcy court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 1332. (Cmplt. (Dkt. No. 3-1) ¶ 15)

On July 18, 2014, Defendants moved to withdraw the bankruptcy reference.[2] (Dkt. No. 1) Defendants argue that the reference should be withdrawn because (1) the

---

[2] Defendants have moved to withdraw the reference in other actions filed on behalf of RFC. In four such cases, the motions to withdraw have been denied. See Residential Capital, LLC et al v. Mortg. Inv'rs Grp., Inc., No. 15 Civ. 1902 (JPO) (S.D.N.Y. Sept. 11, 2015) (Dkt. No. 12); Residential Capital, LLC et al v. Suntrust Mortg., Inc., No. 14 Civ. 6015 (RA) (S.D.N.Y. Feb. 20, 2015) (Dkt. No. 33); Greenpoint Mortg. Funding, Inc., 519 B.R. at 606; Residential Capital, LLC v. UBS Real Estate Sec., Inc., No. 14 Civ. 3039 (GBD) (S.D.N.Y. Apr. 29, 2014) (Dkt. No. 38).

In three cases, the parties stipulated to a withdrawal of the reference and to a transfer of the action to Minnesota. See Rescap Liquidating Tr. v. Cadence Bank, N.A., No. 14 Civ. 5250 (CRA) (S.D.N.Y. July 14, 2014) (Dkt. No. 42); Residential Capital, LLC et al v. Honor Bank, No. 14 Civ. 5415 (LGS) (S.D.N.Y. July 17, 2014) (Dkt. No. 26); Rescap Liquidating Tr. v. Synovus Mortg. Corp., No. 14 Civ. 5146 (VSB) (S.D.N.Y. July 10, 2014) (Dkt. No. 31).

In five cases, the applicable agreements contained mandatory forum selection clauses designating Minnesota as the proper forum. In all of these cases, motions to withdraw were granted. See Rescap Liquidating Trust v. CMG Mortg., No. 14 Civ. 4950 (WHP), 2014 WL 4652664, at *4 (S.D.N.Y. Sept. 10, 2014); Rescap Liquidating Tr. v. RBC Mortg. Co., No. 14 Civ. 4457 (AKH) (S.D.N.Y. July 18, 2014) (Dkt. No. 10); ResCap Liquidating Trust v. PHH Mortg. Corp., 518 B.R. 259, 269 (S.D.N.Y 2014); ResCap Liquidating Tr. v. Primary Capital Advisors LLC, No. 14 Civ. 5224 (CTS) (S.D.N.Y. July 14, 2014) (Dkt. No. 31); Rescap Liquidating Tr. v. First Mariner Bank, No. 14 Civ. 5064 (PAC) (S.D.N.Y. July 7, 2014) (Dkt. No. 25).

Here, as noted above, there is no mandatory forum selection clause. (See Cmplt. (Dkt. No. 3-1), Ex. A (Client Contract)). To the extent that Defendants argue that Rescap is collaterally estopped from opposing the motion to withdraw the reference (see Sept. 12, 2014 Def. Ltr. (Dkt. No. 21)), that argument is misguided. Cases that have relied on mandatory forum selection clauses in withdrawing the reference have no application here, given that the agreements before this Court do not contain mandatory forum selection clauses. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 603 (denying motion to withdraw and noting "the absence of the Minnesota exclusive forum selection provision present in the previously decided motions to withdraw the reference in other RFC Actions"); see also Kramer v. Showa Denko K.K., 929 F. Supp. 733, 750

6

bankruptcy court does not have jurisdiction over this proceeding, and (2) even if the bankruptcy court has jurisdiction, analysis of the factors set forth in In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993), demonstrates that the reference should be withdrawn. (Def. Br. (Dkt. No. 2) at 7-8 (citing In re Orion Pictures Corp., 4 F.3d at 1101))

## DISCUSSION

### I. THE BANKRUPTCY COURT HAS "RELATED TO" JURISDICTION OVER THIS PROCEEDING

#### A. Legal Standard

Under 28 U.S.C. § 157, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). "The Second Circuit applies the expansive test for 'related to' jurisdiction articulated by the Third Circuit in In re Pacor, Inc., 743 F.2d 984 (3d Cir. 1984), which has been adopted by the vast majority of other circuits." In re Refco, Inc. Sec. Litig., 628 F. Supp. 2d 432, 437 (S.D.N.Y. 2008). Under Pacor,

> "[t]he test for determining whether a civil proceeding is related to bankruptcy is whether <u>the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy</u>. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy <u>if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate</u>."

Id. at 437-38 (quoting Pacor, 743 F.2d at 994) (emphasis in Pacor).

"[C]ourts both in this and other circuits have held that 'the scope of [related-to] bankruptcy court jurisdiction diminishes with plan confirmation.'" Id. at 441-42 (quoting In re

---

(S.D.N.Y. 1996) ("Courts prohibit the use of collateral estoppel . . . if the issues in the two proceedings are not truly identical." (citing Lindsay v. Ortho Pharm. Corp., 637 F.2d 87, 92 n.2 (2d Cir. 1980))).

7

Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004)). "According to the line of decisions holding that federal jurisdiction shrinks post-confirmation, 'a party invoking [related-to bankruptcy jurisdiction] post-confirmation . . . must satisfy two requirements,'" id. at 442 (quoting In re Kassover, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006)):

> First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan[,] and second, the plan must provide for the retention of jurisdiction over the dispute.

Id. at 442-43 (quoting Kassover, 336 B.R. at 79).

### B.  Analysis

The bankruptcy court's jurisdiction over Rescap's breach of contract and indemnity claims against mortgage lenders has been challenged in at least three other actions in this District. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 599; Rescap Liquidating Trust v. Primary Capital Advisors, LLC, No. 14 Civ. 5224 (LTS) (S.D.N.Y. Sept. 16, 2014) (Dkt. No. 31 at 4-7); Residential Funding Company, LLC, v. Suntrust Mortg., Inc., No. 13 Civ. 8938 (RA) (S.D.N.Y. July 3, 2014) (Dkt. No. 42 at 3-5). The district courts that have considered this issue have concluded that the bankruptcy court has "related to" jurisdiction over Rescap's claims, see Residential Capital, LLC et al v. Mortg. Inv'rs Grp., Inc., No. 15 Civ. 1902 (JPO) (S.D.N.Y. Sept. 11, 2015) (Dkt. No. 12 at 5 n.4), even under "the more onerous 'close nexus' standard," Suntrust Mortg., Inc., No. 13 Civ. 8938 (RA) (S.D.N.Y. July 3, 2014) (Dkt. No. 42 at 3-5); see Greenpoint Mortg. Funding, Inc., 519 B.R. at 600 ("[T]he instant matter satisfies the more restrictive 'close nexus' standard."); Primary Capital Advisors, LLC, No. 14 Civ. 5224 (LTS) (S.D.N.Y. Sept. 16, 2014) (Dkt. No. 31 at 6) ("[T]he adversary proceeding meets the more stringent 'close nexus' standard."). These courts found that a close nexus exists between the underlying RFC bankruptcy proceeding and the actions before them because "[t]he [breach of

8

contract and indemnity] claims RFC has asserted against [the lenders] . . . directly affect the 'implementation, consummation, execution or administration' of the Plan, as the Plan expressly preserves such claims, transfers them from RFC to the Liquidating Trust, and provides for RFC's creditors to receive a share of any recovery from them." Suntrust Mortg., Inc., No. 13 Civ. 8938 (RA) (S.D.N.Y. July 3, 2014) (Dkt. No. 42 at 4-5); see Greenpoint Mortg. Funding, Inc., 519 B.R. at 600 (finding close nexus because "[t]he confirmed plan of liquidation expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute[,] . . . RFC's claims in th[e] action are such transferred claims, and any funds recovered will be distributed to the creditors of the [bankruptcy] estate"); Primary Capital Advisors, LLC, No. 14 Civ. 5224 (LTS) (S.D.N.Y. Sept. 16, 2014) (Dkt. No. 31 at 6) ("ResCap's claims against [Primary Capital Advisors] directly affect 'the interpretation, implementation, consummation, execution or administration' of the Plan: the Plan expressly preserves RFC's claims and transfers them to the liquidating trust to prosecute. The purpose of this adversary proceeding is to prosecute such a transferred claim. Further, the Plan provides that RFC's creditors will receive a share of any recovery."). This Court finds the reasoning set forth in these decisions fully persuasive here.

As to the first prong of the close nexus test, Defendants acknowledge that "[b]y operation of the Plan, . . . the Debtors assigned to the Liquidating Trust certain assets, including various causes of action[, such as Debtors' claims against Defendants]." (Def. Br. (Dkt. No. 2) at 9) Indeed, the Plan expressly preserves these claims, transfers them to Rescap, and provides for RFC's creditors to receive a share of any recovery that Rescap might obtain. See In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065, ¶¶ 24, 48-49 and Ex. A, Arts. IV, VI-VII; Liquidating Trust Agmt. (Dkt. No. 3-2), Arts. II-V. "Such connections are sufficient to establish a close nexus between this matter and

the RFC bankruptcy proceeding." See Suntrust Mortg., Inc., No. 13 Civ. 8938 (RA) (S.D.N.Y. July 3, 2014) (Dkt. No. 42 at 5); see also Refco, 628 F. Supp. 2d at 443-44 (finding a "close nexus" where "the claims asserted . . . [were] precisely those causes of action that were transferred . . . by the Refco Debtors to the Litigation Trust pursuant to the Plan and the Litigation Trust Agreement . . . [and] [a]ny funds recovered by the Trustee . . . [would] be distributed to Refco's general unsecured creditors"). Moreover, Defendants concede that "Plaintiff can satisfy the second prong of the close nexus test [– that] []the Plan provides for retention of jurisdiction over this matter[.]" (Def. Br. (Dkt. No. 2) at 10)

This Court concludes that the bankruptcy court has "related to" jurisdiction here.

## II.   DEFENDANTS' MOTION FOR WITHDRAWAL OF THE REFERENCE

### A.   Legal Standard

"A district court has broad authority to withdraw the reference [of a proceeding to the bankruptcy court] under appropriate circumstances." Nisselson v. Salim, 2013 WL 1245548, at *2 (S.D.N.Y. Mar. 25, 2013).

28 U.S.C. § 157(d) provides for mandatory withdrawal of the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). "The Second Circuit . . . construes this provision 'narrowly,' requiring withdrawal of the reference only if 'substantial and material consideration of non-Bankruptcy Code federal [law] is necessary for the resolution of the proceeding.'" In re Extended Stay, Inc., 466 B.R. 188, 196 (S.D.N.Y. 2011) (quoting In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990)).

Section 157(d) also provides for permissive withdrawal of the reference, whereby a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

> In exercising its broad discretion to withdraw the bankruptcy reference, the Court should consider the following factors: (1) whether the bankruptcy court has constitutional authority to enter a final decision; (2) judicial economy; (3) uniformity in bankruptcy administration; (4) economical use of debtors' and creditors' resources; (5) reduction of forum shopping and confusion; (6) expediting the bankruptcy process and (7) the presence of a jury demand.

Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 486 B.R. 579, 582 (S.D.N.Y. 2013) (footnote omitted) (citing In re Orion Pictures, 4 F.3d at 1101).[3]

As the moving party, Defendants bear the burden of showing that withdrawal of the reference is warranted. In re Ames Dept. Stores, Inc., 1991 WL 259036, at *2 (S.D.N.Y. Nov. 25, 1991).

## B. Permissive Withdrawal of the Reference Is Not Warranted

Defendants do not contend that withdrawal of the reference is mandatory under Section 157(d). (See Def. Br. (Dkt. No. 2) at 16-22) Instead, they argue that this Court should withdraw the reference in light of the factors set forth by the Second Circuit in In re Orion Pictures, 4 F.3d at 1101. (Id.) Analysis of these factors – as modified by Stern v. Marshall, 131

---

[3] In In re Orion Pictures, the Second Circuit instructed "district court[s] considering whether to withdraw the reference [to] first evaluate whether the claim is core or non-core. . . ." In re Orion Pictures, 4 F.3d at 1101. After the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), however, "the majority of courts in this Circuit have determined that th[is] primary Orion factor . . . ha[s] been supplanted by a determination 'of whether the bankruptcy court may finally determine a proceeding or whether the bankruptcy court's proposals must be reviewed de novo by a district court. . . .'" Sec. Inv'r Prot. Corp., 486 B.R. at 582 n.1 (quoting Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd., 905 F. Supp. 2d 526, 530 (S.D.N.Y. 2012)).

11

S. Ct. 2594 (2011) – indicates, however, that permissive withdrawal of the reference is not appropriate.

### 1. The Bankruptcy Court's Authority to Enter a Final Decision

When considering a motion for permissive withdrawal, "the first inquiry is whether the bankruptcy court has final adjudicative authority over the claim. . . ." Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 530.[4] "[O]nly Article III courts may make final determinations in common law, equity, and admiralty suits." Id. In Stern,

> the Supreme Court set forth three instances where a bankruptcy court may adjudicate finally a claim at issue: (1) if the claim involves a public right; (2) if the process of adjudicating the creditor's proof of claim would resolve a counterclaim; or (3) if the parties consent to final adjudication by the bankruptcy court.

Id. (citing Stern, 131 S. Ct. at 2608, 2614, 2617; In re Lyondell Chem. Co., 467 B.R. 712, 720 (S.D.N.Y. 2012) (considering these three factors in deciding motion to withdraw bankruptcy reference)). None of these exceptions apply here.

The public right exception is limited to "cases in which the claim at issue derives from a federal regulatory scheme, or in which resolution of the claim by an expert [g]overnment agency is deemed essential to a limited regulatory objective within the agency's authority." Stern, 131 S. Ct. at 2598. No federal regulatory scheme or government agency is implicated in this adversary proceeding, which concerns "claims solely under state contract law and does not

---

[4] This Court acknowledges that other courts addressing this issue have considered "the proceeding's core/non-core status." PHH Mortg. Corp., 518 B.R. at 266. To the extent that the core/non-core inquiry is relevant here, this Court agrees with those courts that have concluded that RFC's indemnification and breach of contract claims against mortgage lenders are non-core proceedings. See id. at 264; Greenpoint Mortg. Funding, Inc., 519 B.R. at 602; Primary Capital Advisors, LLC, No. 14 Civ. 5224 (LTS) (S.D.N.Y. Sept. 16, 2014) (Dkt. No. 31 at 8); CMG Mortg., 2014 WL 4652664, at *2-3; RBC Mortg. Co., No. 14 Civ. 4457 (AKH) (S.D.N.Y. Jul. 18, 2014) (Dkt. No. 10 at 3-5); see also In re Orion Pictures, 4 F.3d at 1102 ("[T]his breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core.").

invoke any rights under the Bankruptcy Code." Greenpoint Mortg. Funding, Inc., 519 B.R. at 601; see Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 531 ("Regardless of the exact contours of the public rights exception, the state law breach of contract claim here is clearly outside its bounds.").

The second and third Stern exceptions are likewise not applicable. As noted above, Defendants have not filed any claim against the bankruptcy estate, and therefore no proof of claim will be resolved in connection with this adversary proceeding. Nor have Defendants consented to final adjudication by the bankruptcy court.

Accordingly, this adversary proceeding does not fall within any of the three Stern exceptions, and the bankruptcy court lacks constitutional authority to enter a final judgment on Plaintiff's claims.

In light of this determination,

> the adjudication of this action will inevitably return to this Court at some point in time. The question that remains is whether that point in time should be the present, through withdrawal of the reference, or after the bankruptcy court has submitted its proposed findings of fact and conclusions of law for de novo review. To answer this question, the Court must consider the remaining Orion factors.

Greenpoint Mortg. Funding, Inc., 519 B.R. at 602-03.

### 2. **Judicial Economy**

Defendants argue that "[c]onsiderations of efficiency and judicial economy weigh in favor of withdrawal[,] . . . [because] the Bankruptcy Court's inability to enter a final judgment in this matter means the matter will be litigated twice – once in the Bankruptcy Court and once in the District Court – before any judgment will be entered." (Def. Br. (Dkt. No. 2) at 18)

Although the bankruptcy court lacks constitutional authority to enter a final judgment on Plaintiff's claims, it may still "hear the case in the first instance and recommend

13

proposed findings of fact and conclusions of law." Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec., 490 B.R. 46, 49 (S.D.N.Y. 2013). Moreover, permissive withdrawal of the reference may not be warranted if "considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law." Id. at 58 (collecting cases); see also In re Orion Pictures, 4 F.3d at 1101 (courts considering permissive withdrawal "should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors"); In re Lyondell Chem. Co., 467 B.R. at 723 ("The bankruptcy court's authority to enter final judgment on claims is not determinative in deciding whether to withdraw the reference. . . ."). "[I]n cases where the bankruptcy court is more familiar with the record or already has extensive experience in the matter, it may be most efficient for the bankruptcy court to propose recommendations first, even though the district court ultimately would have to review them de novo." Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 533; see, e.g., Lyondell Chem. Co., 467 B.R. at 723-24 (denying motion to withdraw reference where bankruptcy court had overseen discovery and begun work on several motions); Adelphia Recovery Trust v. FLP Grp., Inc., 2012 WL 264180, at *7 (S.D.N.Y. Jan. 30, 2012) (denying motion to withdraw reference where bankruptcy court had "a wealth of knowledge[,] . . . having overseen . . . th[e] action for seven years"); Extended Stay, Inc., 466 B.R. at 206 ("Judicial economy would be promoted by allowing the bankruptcy court, already familiar with the extensive record in this case, to initially adjudicate these cases.").

Such is the case here. The bankruptcy court is familiar with the bankruptcy estate as a whole, having overseen its administration since May 2012. Indeed, Judge Glenn has "expertise and extensive familiarity with the Plan and Global Settlement in this complex

bankruptcy case." Greenpoint Mortg. Funding, Inc., 519 B.R. at 603. Such expertise is significant in this action, where "the methodology by which the parties will determine [Defendants'] share of the liabilities incurred by RFC in the Global Settlement is not a matter of reviewing a schedule or applying a simple arithmetic formula, but will likely require substantial consideration, interpretation, and application of the terms of the Plan and the Global Settlement incorporated therein." Id.

> Under the terms of the Global Settlement, with respect to each of thousands of individual tranches within hundreds of RMBS securitizations, RFC agreed to settle individual claims in exchange for recognizing a corresponding claim in the bankruptcy proceeding. Based on this Court's initial review of the Plan and the terms of the Global Settlement, . . . it appears more likely than not that any allocation methodology will require substantial reference to and interpretation of the terms of the Plan and the Global Settlement. Having approved the Plan and the Global Settlement, Judge Glenn is better situated than this Court to analyze, interpret, and apply its terms in connection with the allocation of [Defendants'] potential liability based on the amounts that RFC agreed to pay under the Global Settlement.

Id. at 603-04 (citing In re Residential Capital, LLC, No. 12-12020 (MG) (Bankr. S.D.N.Y. Dec. 11, 2013) (Bankr. Dkt. No. 6065, Ex. A (Appendix), Art. IV(A)-(J), Schedules 1G, 1R, 2G, 2R, 3G, 3R)). Resolution of Rescap's claims against Defendants will therefore require "reference to, the interpretation of, and [possibly] evaluation of the reasonableness of a complex settlement arrangement resolving liability that [Rescap] now claims is attributable to . . . the actions of at least 84 different originators." Id. at 605. Accordingly, apportionment of Defendants' liabilities will be addressed most efficiently by the bankruptcy court in the first instance.

Moreover, discovery in this proceeding has already commenced, in coordination with at least three other actions before the bankruptcy court in which Rescap asserts similar claims. (See Nesser Decl. (Dkt. No. 7), Ex. A at 36 ("To the extent possible, I want discovery in all of the cases coordinated. To the extent possible, I only want witnesses deposed once. To the extent possible, I want documents produced once, certainly from the plaintiff. So it's my

goal . . . [that] discovery . . . be consolidated.")); Greenpoint Mortg. Funding, Inc., 519 B.R. at 603-05 (denying motion to withdraw the reference, and noting that "at least two and potentially more of the RFC Actions will be tried before Judge Glenn on a coordinated basis regardless of the outcome of any pending motions to withdraw the reference" (citing Residential Funding Co. v. HSBC Mortg. Corp. (USA), Adv. Pro. No. 14-1915 (MG) (Bankr. S.D.N.Y. 2014); ResCap Liquidating Trust v. Mortg. Inv'rs Grp., Inc., Adv. Pro. No. 14-2004 (MG) (Bankr. S.D.N.Y. 2014))). These actions "involve substantially similar allegations against different originators . . . [that] will require a determination of the allocation of each originator's share of liability, if any, for the amounts paid by RFC pursuant to the Global Settlement." Greenpoint Mortg. Funding, Inc., 519 B.R. at 604. Accordingly, as Judge Glenn has noted, these actions are likely to share common issues:

> [T]he extent to which RFC relies on reps and warranties . . . in large measure [is] going to be a common issue. . . .
>
> As to the amount of the . . . indemnity claims and any other rep and warranty claims and how much RFC has paid . . . [a]gain, that would seem to be a common issue. There was a global settlement as part of the bankruptcy case[s] which I approved. . . . [T]here was a methodology by which the RMBS trustees were going to allocate the claim. . . . [S]o [those] seem[] to be . . . common factual issues that are going to have to be explored.

(Nesser Decl. (Dkt. No. 7), Ex. A at 62)

In sum, although this Court will eventually conduct a de novo review, it is more efficient for the bankruptcy court to propose findings of fact and conclusions of law in the first instance. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 605 ("Particularly where, as here, the bankruptcy court has substantial familiarity and facility with the Plan and the Global Settlement, permitting that court to try the case and enter proposed findings of fact and

conclusions of law has significant efficiency advantages despite the need for de novo review before this Court."). This factor therefore weighs strongly against withdrawing the reference.

### 3. Uniformity in Bankruptcy Administration

"To evaluate whether a benefit to uniform [bankruptcy] administration exists, courts look to the nature of the cause of action." Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 533. "Courts routinely have found no benefit where claims are based on state law." Id. Because this action involves only state law claims and not substantive bankruptcy law, this factor weighs in favor of withdrawing the reference. See Greenpoint Mortg. Funding, Inc., 519 B.R. at 605.

### 4. Economical Use of Debtors' and Creditors' Resources

Defendants have not demonstrated that cost or delay considerations weigh in favor of withdrawing the reference. Although this Court will be required to conduct a de novo review, the efficiency gained by having this action proceed before the bankruptcy court – as described above – is likely to lead to an overall reduction in costs and delay. See id. ("While Greenpoint argues that the necessity of this Court's de novo review of the bankruptcy court's proposed findings of fact and conclusions of law will impose additional costs on the parties, this consideration is outweighed by the likelihood that leaving the case before the bankruptcy court will facilitate a more efficient resolution of the case.").

### 5. Discouraging Forum Shopping

Defendants have likewise not demonstrated that Rescap's filing of this proceeding in bankruptcy court – as opposed to district court – reflects forum shopping. While Rescap has filed other actions in the District of Minnesota and in this District, this adversary proceeding – along with several others raising similar claims – was filed in bankruptcy court for the Southern

District of New York, invoking bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334. As discussed above, significant efficiencies will be realized from the adjudication of Rescap's claims before the bankruptcy court. Because "[t]here is no indication that forum shopping was [Rescap's] motivation, as opposed to a genuine desire for more efficient adjudication[,] . . . this consideration does not cut one way or the other" in determining whether to withdraw the reference. See Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 533; see also Greenpoint Mortg. Funding, Inc., 519 B.R. at 606 ("RFC's tactics may have been undertaken in the legitimate pursuit of efficiency. Overall, this factor weighs neither in favor nor against granting the motion to withdraw the reference.").

### 6. Jury Demand

"Orion also directs lower courts to consider whether the proceeding may involve a jury trial, which cannot be conducted by a non-Article III court without consent of the parties." Dynegy Danskammer, L.L.C., 905 F. Supp. 2d at 534 n.3. "If a jury trial were required, this could counsel for withdrawal of the reference." Id.

Here, "neither side has made a jury demand, and the language of [Defendants'] [a]greement[s] [with RFC] indicates that the parties agreed to waive their right to a jury trial." See Greenpoint Mortg. Funding, Inc., 519 B.R. at 605; Cmplt. (Dkt. No. 3-1), Ex. A (Client Contract) ¶ 14 ("[Summit Financial] and [RFC] each promises and agrees not to elect a trial by jury of any Issue triable of right by a jury, and fully waives any right to trial by jury to the extent that any such right now exists or arises after the date of this Contract."); Cmplt. (Dkt. No. 3-1), Ex. A (Guaranty) ¶ 18 ("THE GUARANTOR, BY EXECUTION AND DELIVERY HEREOF, AND RFC, BY ITS ACCEPTANCE HEREOF, HEREBY (i) COVENANTS AND AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY A JURY,

18

AND (ii) WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST." (emphasis in original)).

Given the absence of a jury demand, and the fact that the parties have waived their right to a jury trial in the Client Contract and the Guaranty, this factor does not weigh in favor of withdrawing the reference.

\* \* \* \*

Analysis of the Orion factors – in particular, judicial economy – demonstrates that withdrawal of the bankruptcy reference is not appropriate. Defendants "ha[ve] not carried [their] burden to prove that withdrawal is warranted by a preponderance of the evidence." Greenpoint Mortg. Funding, Inc., 519 B.R. at 606. Accordingly, Defendants' motion to withdraw the reference will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to withdraw the reference is denied. The Clerk of the Court is directed to terminate the motion (Dkt. No. 1). The Court directs that this adversary proceeding be returned to the Bankruptcy Court for the Southern District of New York for further proceedings consistent with this opinion and order.

Dated: New York, New York
       March 22, 2016

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

19